**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MICHAEL T. SMITH,<br><br>          Plaintiff,<br><br>    v.<br><br>CITY OF BAYONNE and JOSEPH DEMARCO,<br><br>          Defendants. | Civil Action No.: 17-4831<br><br><br>**OPINION & ORDER** |

**CECCHI, District Judge.**

Before the Court is plaintiff Michael Smith's ("Plaintiff") motion for summary judgment. ECF No. 166; *see also* ECF No. 166-1 ("PSJ Br."). Defendants City of Bayonne ("Bayonne") and Joseph Demarco ("Demarco," and collectively, "Defendants") opposed the motion and filed a cross motion for summary judgment against Plaintiff. ECF No. 167; *see also* ECF No. 167-1 ("DSJ Br."). Plaintiff and Defendants both filed replies. *See* ECF No. 168; ECF No. 169. The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Plaintiff's motion is denied, and Defendants' motion is granted.

## I.  BACKGROUND[1]

Bayonne laid off Plaintiff from his municipal employment in 2015. After the New Jersey Civil Service Commission rejected his challenge to his termination, Plaintiff initiated this lawsuit.

### A.  Factual History

Plaintiff was employed by Bayonne as a "Field Representative, Citizens Complaints" in the city's Municipal Services Department ("MSD"). ECF No. 167-2 ("DSOMF") ¶ 1. In this role,

---

[1] "The Court distills this undisputed version of events from the parties' statements of material facts, affidavits, and exhibits accompanying both pending motions for summary judgment." *Lacroce v. M. Fortuna Roofing, Inc.*, No. 14-7329, 2017 WL 431768, at *1 n.1 (D.N.J. Jan. 31, 2017).

1

Plaintiff performed property code enforcement and handled citizens' complaints about property issues. ECF No. 167-32 ("DSJ Decl."), Ex. 11 ("CSC Decision") at 2. Under the administration of Mayor Mark A. Smith ("Mayor Smith"), Bayonne instructed Plaintiff's department to "actively look[] for code violations" in the city in addition to responding to citizens' complaints. *Id.* at 2, 4.

In 2014, James Davis ran against the incumbent Mayor Smith in the Bayonne mayoral election. *Id.* ¶¶ 3–5. Plaintiff supported Mayor Smith's campaign in some capacity, including by picking up campaign signs with his truck, installing a door in the Smith campaign headquarters, and canvassing with council members who shared Mayor Smith's "slate." *Id.* ¶ 11. Mayor Smith lost the election, and James Davis became Mayor ("Mayor Davis" or the "Davis Administration") in July 2014. *Id.* ¶¶ 5–6.

When Mayor Davis took office, he instituted a change in philosophy regarding property code enforcement within MSD. *Id.* ¶¶ 12, 14. Under his administration, Bayonne would be less punitive in enforcement and would return to having a "rehabilitative approach," by not actively looking for property maintenance violations but rather by primarily responding to complaints. *Id.* ¶¶ 12, 17. As a result, Bayonne did not need as many employees to enforce the property code. *Id.* ¶ 20. Given that Bayonne had both a budget deficit and a need for fewer employees in these positions, Demarco, a business administrator for Bayonne, proposed layoffs that would ultimately include Plaintiff. *Id.* ¶¶ 13, 18, 20, 22. Mayor Davis agreed with the implementation of these layoffs, but was not involved in the decision to lay off Plaintiff specifically. *Id.* ¶ 23.

After Demarco met with Plaintiff's union representatives, Bayonne submitted a proposed layoff plan to the Civil Service Commission ("CSC") at the end of May 2015. *Id.* ¶¶ 24–26. The plan stated that Bayonne was reducing its force in MSD for the titles of Field Representative, Citizens Complaints due to reasons of economy and budget shortfalls. *Id.* ¶ 27.

2

The CSC approved the layoff plan on June 1, 2015. *Id.* ¶ 30. That same day, all MSD employees received a "General Notice of Layoff." *Id.* ¶ 32. Also that same day, Bayonne served Plaintiff with an "Individual Notice of Layoff" that advised him that he was being laid off effective July 17, 2015, for reasons of economy and efficiency. *Id.* ¶¶ 33–34.

After receiving this notice, Plaintiff suffered ankle and foot injuries in a motorcycle accident on or about June 11, 2015. *Id.* ¶¶ 61–62; *see also* DSJ Decl., Ex. 13 ("Pl. Dep.") at 24:21–25:6. Plaintiff was then out on sick leave from the date of the accident until the effective date of the layoff. *Id.* ¶ 63. Plaintiff testified that he was not claiming that the city laid him off because of this injury. *Id.* ¶ 66. He also testified that he never requested an accommodation for his injury before being laid off and that, in any event, he could not have returned to work due to the injury even with an accommodation. *Id.* ¶¶ 66–67; *see also* Pl. Dep. at 78:23–79:6, 94:24–95:9.[2]

On June 22, 2015, the CSC sent Plaintiff a letter confirming the layoff and advising him of his appeal rights. DSOMF ¶¶ 36–37. Plaintiff appealed the layoff to the CSC on July 14, 2015. *Id.* ¶ 38. On July 17, 2015, the layoff became effective. *Id.* ¶ 40.

In 2016, Plaintiff's layoff appeal (combined with the appeal of two other individuals) was heard by an Administrative Law Judge ("ALJ") of the New Jersey Office of Administrative Law. *Id.* ¶¶ 42–43. On November 2, 2016, the ALJ issued an initial decision offering his recommendation that Plaintiff "should be restored to [his] previous position[] of employment with Bayonne immediately" because the layoffs were done in bad faith and not "for reasons of economy, efficiency, or other related reasons." ECF No. 166-4 ("PSJ Decl."), Ex. A ("ALJ Rec.") at 19.

---

[2] After he was laid off, Plaintiff was on short-term disability, then long-term disability, then social security disability. DSOMF ¶ 64.

3

Then, on January 18, 2017, the CSC determined not to adopt the ALJ's recommendation based on its independent evaluation of the entire record, and affirmatively upheld Bayonne's layoffs. *Id.* ¶ 44. The CSC issued a final written administrative action on February 10, 2017, upholding the layoffs and dismissing Plaintiff's appeal. *Id.* ¶ 45. Plaintiff then appealed this decision to the Appellate Division of the New Jersey Superior Court. *Id.* ¶ 46. On March 28, 2019, the Appellate Division affirmed the CSC's reversal of the ALJ's recommendation, thus concluding that the layoffs were done in good faith. *Id.* ¶¶ 47–48. Additionally, the Appellate Division rejected Plaintiff's argument that the ALJ's recommendation became final by virtue of the CSC's alleged delay in acting on the case. *See* DSJ Decl., Ex. 12 ("App. Div. Op.") at 14–16.

Plaintiff testified that besides him and the other original Plaintiff in this action, Michael Mulcahy (who settled his claims and was dismissed from this action in 2020, *see* ECF No. 58), he did not know of any other "supporters" of Mayor Smith whom the Davis Administration had terminated from municipal employment. Pl. Dep. at 57:3–7. In fact, the Davis Administration did not fire Plaintiff's wife, who also worked for Bayonne and had supported Mayor Smith in the election. *Id.* at 36:22–37:3, 61:14–17. Nor did Mayor Davis terminate the Director of Public Works, who had also supported Mayor Smith's campaign. *Id.* at 59:15–60:16. Conversely, Mayor Davis fired individuals who had supported him in the election. *Id.* at 89:5–17.

**B.     Procedural History**

Plaintiff raised seven causes of action in the Complaint: (1) violations of the First and Fourteenth Amendments of the U.S. Constitution under 42 U.S.C. § 1983; (2) violations of the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*; (3) violations of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1, *et seq.*; (4) violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*; (5) breach of contract; (6) breach of the implied covenant of good faith and fair dealing; and (7) violations of Article 1 of the New Jersey

Constitution under the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-2. ECF No. 1 ("Compl.") ¶¶ 26–70. Defendants answered, and discovery followed. ECF No. 6. Both parties now move for summary judgment. ECF Nos. 166–167.

## II.    LEGAL STANDARD

Summary judgment is appropriate if the "depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, [and] other materials" demonstrate that there is no genuine issue as to any material fact, and, construing all facts and inferences in the light most favorable to the non-moving party, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). A factual dispute is "genuine" if a reasonable jury could find in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). A factual dispute is "material" if "it bears on an essential element of the plaintiff's claim." *See Blunt*, 767 F.3d at 265 (quoting *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 580 (3d Cir. 2003)).

The moving party has the initial burden of proving the absence of any genuine issue of material fact. *See Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-moving party has the burden of identifying specific facts to show that, to the contrary, a genuine issue of material fact exists for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986). To meet its burden, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citation omitted); *see also SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) ("'[T]he mere existence of a scintilla of evidence' favoring the non-moving party will not prevent summary judgment." (citation omitted)); *Jones v. United Parcel Serv.*, 214

F.3d 402, 407 (3d Cir. 2000) ("[A] plaintiff cannot rely on unsupported allegations [to survive summary judgment]."). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citation omitted).

"The standard by which the court decides a summary judgment motion does not change when the parties file cross-motions." *Clevenger v. First Option Health Plan of N.J.*, 208 F. Supp. 2d 463, 468 (D.N.J. 2002). "When ruling on cross-motions for summary judgment, the court must consider the motions independently . . . and view the evidence on each motion in the light most favorable to the party opposing the motion." *Id.* at 468–69 (citations omitted).

## III.   DISCUSSION

### A. Plaintiff's Reliance on Certain Materials

As a threshold matter, the Court must address Plaintiff's reliance on two sources in his submissions.  First, he asserts that the ALJ's recommendation became final and therefore, is entitled to "judicial deference" and "collateral estoppel."  *See* PSJ Br. at 2–3, 11–15.  Second, Plaintiff contends that all facts in his requests for admission ("RFAs") should be deemed admitted. *See id.* at 3–4, 15–18.  Neither position has merit.

#### i.    *The ALJ Recommendation*

Upon Plaintiff's appeal of his termination, an ALJ concluded that the layoffs were done in bad faith and not "for reasons of economy, efficiency or other related reasons" and recommended that Plaintiff "should be restored to [his] previous position[] of employment with Bayonne immediately." ALJ Rec. at 19.  Plaintiff argues that this decision "became final" under New Jersey law forty-five days after it was issued.  PSJ Br. at 12; *see also* ECF No. 166-2 ("PSOMF") ¶ 56

("On or before December 17, 2016, the head of the agency failed to [act] within 45 days, ALJ Betancourt's ruling became the final decision in the case.").

But the subsequent appellate history of that case belies this position. The CSC declined to adopt the ALJ's findings upon its *de novo* review and upheld the layoffs, stating that the "the ALJ's recommendation . . . [could not] be sustained" by the record. CSC Decision at 5–8. Plaintiff then appealed the CSC's decision to the Appellate Division of the Superior Court of New Jersey, which affirmed. *See generally* App. Div. Op. After summarizing the CSC's findings, the court found that its own "independent review reveal[ed] . . . no basis to reverse the [CSC's] credibility findings or its other findings of fact, all of which find support in the evidence." *Id.* at 11. Specifically, the "testimony and evidence supported Bayonne's determination that . . . Smith's position[] [was] unnecessary to complete the MSD's property maintenance enforcement responsibilities following Bayonne's implementation of the new enforcement philosophy." *Id.* at 13.

Plaintiff also argued in his appeal, as he does here, that the ALJ's recommendation had become final forty-five days after it was issued. *See id.* at 9. The Appellate Division analyzed and rejected this argument, finding that the CSC timely filed for and obtained an extension to review the ALJ's recommendation, and then issued its own decision within that extended time period. *See id.* at 13–16 ("We are not persuaded by [Plaintiff's] argument that the ALJ's decision should be deemed adopted . . . because the [CSC] did not modify or reject the decision within forty-five days."); *id.* at 16 ("[T]here is no basis to conclude the ALJ's decision should be deemed adopted . . . . "). Thus, there is no merit to Plaintiff's argument that ALJ's recommendation became final and is thus entitled to "judicial deference" and "collateral estoppel."[3]

---

[3] Plaintiff raised this argument in prior filings. *See* ECF No. 114-1 at 12–13; ECF No. 158-1 at 13–14. In response to Plaintiff initially making this assertion, Defendants served Plaintiff's counsel with a letter demanding that Plaintiff withdraw the motion under Rule 11. *See* DSJ Decl.,

ii.      *The Requests for Admission*

Plaintiff also argues in his opening brief that his RFAs should be deemed admitted.[4]  PSJ Br. at 15–18.  Plaintiff first takes issue with the fact that Defendants' 2022 responses to his RFAs (incorrectly described as 2023, *see* PSJ Decl., Ex. J) were not certified by Defendants or their attorney.  PSJ Br. at 16.  Plaintiff made this same argument in a prior summary judgment filing. *See* ECF No. 158-1 at 14–15.[5]  Defendants objected to Plaintiff making this argument in a summary judgment brief and requested a conference with Judge Hammer.  ECF No. 159 at 1–2. After the conference, Judge Hammer entered an order on May 21, 2024, denying Plaintiff's request to deem the RFAs admitted.  ECF No. 165.  Thus, Plaintiff's argument concerning the 2022 RFAs appears to be an appeal of Judge Hammer's May 21, 2024, order.  Plaintiff filed his summary judgment brief on June 17, 2024.  *See* ECF No. 166.  Even if it were appropriate to appeal this order in a summary judgment brief, Plaintiff has not complied with Local Rule 72.1(c)(1)(A) by filing his appeal within fourteen days of the order.  This appeal is therefore untimely and is denied. *See Wigglesworth v. Maiden Holdings, Ltd.*, No. 19-5296, 2023 WL 1794788, at *1 (D.N.J. Feb. 7, 2023) (stating that the court had previously denied an appeal as untimely when filed five days after the expiration of the fourteen-day window).

---

Ex. 27.  The letter pointed out that Plaintiff had failed to mention that the Appellate Division's ruling had explicitly rejected the exact argument Plaintiff was raising.  *See id.* at 2–3.  Despite the state court's clear rejection of this argument, Plaintiff does not sufficiently explain on what basis this Court could disregard the Appellate Division's decision.  *See* PSJ Br. at 2 ("In anticipation of Defendants' counsel's argument . . . rel[ying] on an Appellate Decision; that argument is moot.").

[4] Plaintiff has repeatedly argued for his RFAs to be deemed admitted at different points in this litigation, albeit for different reasons.  Both this Court and Magistrate Judge Hammer have rejected Plaintiff's argument in each instance.  *See* ECF Nos. 123, 125, 133, 145, 165.

[5] Plaintiff's second motion for summary judgment was administratively terminated without prejudice.  ECF No. 161.

Second, Plaintiff challenges Defendants' most recent responses to his RFAs, which were served following Judge Hammer's order. PSJ Br. at 16. Plaintiff argues that Defendants failed to conduct a "reasonable inquiry" to answer the RFAs as required under Rule 36(a)(4) and (6) and thus they should be deemed admitted. *Id*. at 16–18. A party making this argument—that responses to RFAs are insufficient—"may move to determine the sufficiency of an answer." Fed. R. Civ. P. 36(a)(6). Then, "[o]n finding that an answer does not comply with [Rule 36]," including 36(a)(4), "the court may order either that the matter is admitted or that an amended answer be served." *Id.* Plaintiff has not so moved. In fact, Defendants assert that Plaintiff never even communicated any issue with these RFA responses until filing the instant motion for summary judgment. DSJ Br. at 17. Thus, absent a proper motion under Rule 36(a)(6), the Court rejects Plaintiff's argument in summary judgment briefing that the facts in the RFAs should be deemed admitted.[6]

## B.  Count I: Federal Constitutional Claims

Plaintiff asserts political discrimination, due process, and equal protection claims under the First and Fourteenth Amendments of the U.S. Constitution.[7] For the reasons set forth below, Defendants are entitled to summary judgment on these claims and Plaintiff's motion is denied.

---

[6] The cases cited by Plaintiff also do not support the proposition that the RFAs should be deemed admitted merely because Plaintiff is dissatisfied with Defendants' responses. PSJ Br. at 16–18. Instead, these authorities merely state that RFAs can be deemed admitted if a party completely fails to serve a response, which is not the case here. *See, e.g.*, *Sony Corp. of Am. v. D S Audio, Inc.*, No. 88-2346, 1988 WL 119601, at *1 (E.D. Pa. Nov. 7, 1988) ("Requests for admission that have remained *unanswered or unobjected to for thirty days* after service are deemed to be admitted." (emphasis added)); *O'Campo v. Hardisty*, 262 F.2d 621, 623 (9th Cir. 1958) ("[P]laintiff, by her *failure to answer the request for admissions* as required by the rule, admitted the truth of all the matters contained in the request for admissions." (emphasis added)); *Shelton v. Fast Advance Funding, LLC*, 805 F. App'x 156, 158–59 (3d Cir. 2020) ("Matters deemed admitted due to *a party's failure to respond* to requests for admission are conclusively established . . . ." (emphasis added)).

[7] The Court notes that despite the Complaint stating that this "cause of action is pled against Defendant City of Bayonne," Compl. ¶ 26, Plaintiff argues in his summary judgment briefing that Demarco is also liable for due process and equal protection violations. *See* PSJ Br. at 23–25. But

9

i.     *Political Discrimination*

Plaintiff claims that he suffered political discrimination because the Davis Administration allegedly fired him for supporting Mayor Smith's mayoral campaign.  Compl. ¶¶ 26–27.  To establish a prima facie case of political discrimination, Plaintiff must produce evidence to meet a three-part test: "(1) []he was employed at a public agency in a position that does not require political affiliation, (2) []he was engaged in constitutionally protected conduct, and (3) this conduct was a substantial or motivating factor in the government's employment decision."  *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 271 (3d Cir. 2007).  Implicit in the third element "is a requirement that the plaintiff produce sufficient evidence to show that the defendant knew of the plaintiff's political persuasion, which requires proof of both knowledge and causation."  *Best v. Hous. Auth.*, 61 F. Supp. 3d 465, 472 (D.N.J. 2014) (quoting *Galli*, 490 F.3d at 275).  Even if Plaintiff meets this burden, Defendants may "avoid a finding of liability by [showing] by a preponderance of the evidence that the same employment action would have been taken even in the absence of the protected activity."  *Galli*, 490 F.3d at 271 (quoting *Stephens v. Kerrigan*, 122 F.3d 171, 176 (3d Cir. 1997)).

Plaintiff's political discrimination claim fails for two reasons.  First, as Defendants argue, DSJ Br. at 21–22, Plaintiff has failed to adduce evidence showing that his political activity was a substantial or motivating factor in his dismissal.[8]  Plaintiff relies on three sources in support of this claim: (1) his unverified Complaint, (2) the ALJ's recommendation, and (3) the Affidavit of

---

Plaintiff "cannot amend [his] complaint through argument in a brief opposing summary judgment." *Walden v. Bank of New York Mellon Corp.*, No. 20-1972, 2024 WL 5118469, at *9 (W.D. Pa. Dec. 16, 2024).  In any event, for reasons discussed below Plaintiff has not adduced sufficient evidence to survive summary judgment on these claims against either Defendant.

[8] Defendants also contend that Plaintiff did not engage in any constitutionally protected political activity to satisfy the second element of this claim.  DSJ Br. at 19.  The Court need not address the second element because, as discussed below, it finds that Plaintiff's claim fails on other grounds.

Patrick Leonard, a clerk in Mayor Davis's office, PSJ Decl., Ex. C ("Leonard Aff."). *See* PSJ Br. at 19–25. These materials, however, are inadequate to show a genuine issue of material fact that Plaintiff's political activity played a role in his dismissal.

As to his Complaint, "[p]leadings are not documents that can support factual assertions at summary judgment." *Jerri v. Harran*, No. 13-1328, 2016 WL 3453203, at *3 n.4 (E.D. Pa. June 23, 2016) (citing *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995)); *cf. Lee v. Sixth Mount Zion Baptist Church of Pittsburg*, No. 15-1599, 2017 WL 3608140, at *10 (W.D. Pa. Aug 22, 2017) ("A well-supported motion for summary judgment will not be defeated where the non-moving party merely reasserts factual allegations contained in the pleadings."). Next, as discussed above, the ALJ's recommendation was rejected on appeal and that rejection was affirmed by the Appellate Division. App. Div. Op. at 12–13 (affirming the CSC's determination that Plaintiff "failed to sustain [his] burden of proving the layoffs were made in bad faith"). Finally, Plaintiff cites the Leonard Affidavit to show that "Defendant Demarco and the Defendant City of Bayonne's Appointing Authority" Mayor Davis "were present during discussions" about Plaintiff's political activities. PSJ Br. at 19. This document does not support this proposition. Leonard's affidavit states that, in his role as a clerk in the mayor's office, he was present for conversations where "Michael Mulcahys' [sic] employment was discussed." Leonard Aff. ¶¶ 2–4. It does not state that he was present for any discussion about Smith. *See generally id.* Additionally, the affidavit does not state that Mayor Davis was present for any of the conversations described. *See id.* And because the affidavit fails to affirmatively show that Leonard has any personal knowledge about Plaintiff's dismissal, his conclusion that "[t]he termination of . . . [Plaintiff] . . . was political," Leonard Aff. ¶ 7, cannot create a genuine issue of material fact. *Punzo v. SugarHouse Casino*, No. 20-5581, 2022 WL 2718610, at *1 (E.D. Pa. July 12, 2022).

Plaintiff's submissions cite no other evidence showing any political motivation for his dismissal. And in the absence of any corroborating evidence, Plaintiff's belief that he was terminated for political reasons, Pl. Dep. at 57:8–58:3, is speculative and therefore insufficient to withstand summary judgment. *See Wheeler v. Twp. of Edison*, 326 F. App'x 118, 122–23 (3d Cir. 2009) (finding that the plaintiff failed to demonstrate causation where he offered "only conjecture" that he was rejected for a promotion based on his political affiliation). Thus, Plaintiff has not identified record evidence showing that his asserted political activity played any role, let alone a substantial or motivating one, in his termination.

Rather, the evidence undermines Plaintiff's claim that his political activity played a motivating role in his dismissal. Plaintiff testified that other supporters of Mayor Smith, including Plaintiff's wife, were not dismissed by the Davis Administration. *See* Pl. Dep. at 36:22–24, 58:21–60:16, 61:14–17 ("Q. . . . How about in the law department . . ., three attorneys . . . were all known Smith supporters; weren't they? A. I think so, yes. Q. And none of them were terminated; right? A. Not to my knowledge. . . . Q. And again, your wife also was a Smith supporter. Your wife is closely affiliated to you. Did anything happen to her by Mayor Davis? A. No."). Conversely, he also testified that at least two Davis supporters were terminated by the Davis Administration. *Id.* at 89:5–17 ("Q. You mentioned Stacey Percella. She was a Davis supporter; correct? A. Correct. Q. She was terminated . . . [b]y the . . . Davis administration? A. Correct. Q. And PJ Leonard was a Davis Supporter. Correct? A. Correct. Q. And he was terminated? A. Yes.").

Second, and alternatively, there is no genuine issue of material fact that Plaintiff would have been dismissed regardless of any purported political activity. *See* DSJ Br. at 22–23; *Foglesong v. Somerset Cnty.*, No. 12-77, 2014 WL 4796754, at *6–7 (W.D. Pa. Sept. 26, 2014). In the lead up to Plaintiff's termination, "Bayonne had a budget deficit and needed to cut costs."

12

App. Div. Op. at 3.   Concurrently, the incoming Davis Administration sought to change its "philosophy with respect to property code enforcement."  DSJ Decl., Ex. 20 ("Davis Cert.") ¶ 2. With this shift, Bayonne needed fewer property inspectors.  *Id.* ¶¶ 6–7; *see also* App. Div. Op. at 12–13.  Defendants thus offer a legitimate reason for Plaintiff's dismissal, supported by the record, that has nothing to do with any political activity.  *See Oliver v. Rhynhart*, No. 18-279, 2019 WL 3943458, at *13 (E.D. Pa. Aug. 21, 2019) (granting summary judgment to the defendant where substantial evidence supported defendant's proffered explanation for dismissing the plaintiff where the defendant, as candidate for city controller, "repeatedly stated throughout her campaign that she planned to downsize" the office); *Foglesong*, 2014 WL 4796754, at *6–7 (granting summary judgment to the defendants where they presented "uncontroverted evidence" that the plaintiff would have been terminated because of his poor job performance regardless of any political activity).

Plaintiff unpersuasively contests this legitimate justification.  *See* PSJ Br. at 7–8.  He argues that there was, in fact, no change in philosophy with respect to property code enforcement.  The evidence cited, however, does not support this position.   Plaintiff emphasizes that Thomas Keyes, another MSD employee who was not laid off, testified at the ALJ hearings that "no one told him to stop enforcing the property maintenance code."  PSOMF ¶ 43.  For one thing, Defendants do not contend that the Davis Administration instructed the inspectors *not to enforce* the code.  Rather, under the new philosophy, Bayonne would not "actively look for property maintenance violations, but [would instead] respond to complaints."  Davis Cert. ¶ 4; *see also* App. Div. Op. at 12–13 ("The evidence the [CSC] deemed credible showed that following Mayor Davis's election in 2014, Bayonne's property maintenance philosophy changed from an aggressive to a more passive approach.").  For another, the same employee cited by Plaintiff, Thomas Keyes, also testified at

13

those hearings that he was informed that there would be a change in philosophy with regard to enforcement of the property maintenance code and that such a change in fact occurred. *See* DSJ Decl., Ex. 23 at 221:22–222:12, 224:2–12; CSC Decision at 4 ("Keyes testified that Bayonne underwent a change in philosophy between administrations."). Finally, the fact that the City of Bayonne hired a hundred new employees in other departments under the Davis Administration is not inconsistent with the justification for Plaintiff's dismissal—Bayonne needed fewer inspectors in Plaintiff's specific department. Thus, "Plaintiff has identified nothing in the record that would cast doubt on Defendants' explanation for his layoff." *Best*, 61 F. Supp. 3d at 474; *see also Borzak v. City of Bethlehem*, No. 19-5716, 2021 WL 6073095, at *9 (E.D. Pa. Dec. 23, 2021) (finding that the plaintiff had failed to discredit defendants' legitimate justification for her dismissal); *Foglesong*, 2014 WL 4796754, at *6–7 (same). Accordingly, Defendants are entitled to summary judgment on Plaintiff's political discrimination claim and Plaintiff's motion is denied.

### ii. Due Process

Plaintiff asserts that he was fired and "denied the property interest" in his job without due process. Compl. ¶¶ 30–31; PSJ at 23. To prevail on "a claim that removal from a position of public employment violates due process rights, the public employee must prove (1) that the dismissal deprived him of a property or liberty interest, and (2) that the employer did not afford him adequate procedural protections in connection with the action." *Gomez v. Town of W. N.Y.*, No. 13-689, 2013 WL 5937415, at *5 (D.N.J. Nov. 4, 2013).

The record lacks any evidence that Plaintiff was not afforded adequate procedural protections. *See* DSJ Br. at 29. Plaintiff received notice on June 1, 2015, that he was to be laid off on July 17, 2015. DSJ Decl., Ex. 5. Thus, Plaintiff was given advance notice of his layoff in compliance with New Jersey law. *See* N.J. Stat. Ann. § 11A:8-1 ("A permanent employee shall receive 45 days' written notice . . . of impending layoff or demotion and the reasons therefor.").

14

On June 22, 2015, the CSC sent Plaintiff a letter informing him of his right to appeal his termination. DSJ Decl., Ex. 6. Plaintiff then availed himself of this right, *see* N.J. Stat. Ann. § 11A:8-4, and Plaintiff received three days of hearings before an ALJ in 2016. DSJ Decl., Exs. 22–24. The ALJ later issued a recommendation that the layoffs be reversed, but the CSC ultimately rejected the ALJ's findings. *See generally* CSC Decision. Plaintiff appealed this determination to the Appellate Division, *see* N.J. Ct. R. 2:2-3(a)(2), which affirmed the CSC's decision. *See generally* App. Div. Op. Given that Plaintiff was afforded procedures to redress any alleged injuries, he has suffered no procedural due process violation. *See Brown v. Camden Cnty. Bd. of Soc. Servs.*, 704 F. App'x 204, 207 (3d Cir. 2017) (finding that the right to appeal an administrative decision to the Appellate Division is an adequate judicial remedy and thus satisfies procedural due process). Plaintiff does not cite competent evidence showing that these procedures were inadequate but instead references allegations in the Complaint and the ALJ's recommendation. *See* PSJ Br. at 20, 23. Again, the ALJ's recommendation was rejected on appeal and "[p]leadings are not documents that can support factual assertions at summary judgment." *Jerri*, 2016 WL 3453203, at *3 n.4 (citation omitted). Accordingly, Defendants are entitled to summary judgment on Plaintiff's due process claim and Plaintiff's motion is denied.

### iii. Equal Protection

Plaintiff also asserts that he was denied equal protection under the Fourteenth Amendment by virtue of his political affiliations. *See* PSJ Br. at 25 ("Plaintiff Smith was treated differently by Individual Defendant Demarco because of the political retributions . . . ."). To sustain this claim, Plaintiff must put forth evidence that Defendants treated him or his class differently from other similarly situated individuals. *See Baker v. Williamson*, No. 07-2220, 2010 WL 1816656, at *9 (M.D. Pa. May 5, 2010); *Bussinelli v. Twp. of Mahwah*, No. 23-21519, 2024 WL 3755914, at *6 (D.N.J. Aug. 12, 2024).

Plaintiff has not cited any evidence in the record to show such unequal treatment. Again, he points to allegations in his Complaint which, on their own, "can[not] support factual assertions at summary judgment." *Jerri*, 2016 WL 3453203, at *3 n.4 (citation omitted); *cf. Lee*, 2017 WL 3608140, at *10. Moreover, the record undermines Plaintiff's assertion that he was "treated differently . . . because of the political retributions." *See* PSJ Br. at 25. As discussed above, other supporters of Mayor Smith were not laid off and some supporters of Mayor Davis were fired. As Plaintiff has not adduced evidence demonstrating any unequal treatment, Defendants are entitled to summary judgment on Plaintiff's equal protection claim and Plaintiff's motion is denied.

## C. Counts II–III: Disability Discrimination Under the Rehabilitation Act and NJLAD

Plaintiff asserts disability discrimination claims against Bayonne under the Rehabilitation Act and NJLAD. The Court finds that Bayonne is entitled to summary judgment on all such claims and Plaintiff's motion is denied. Additionally, because Bayonne is not primarily liable to Plaintiff, Demarco cannot be individually liable under the NJLAD.

### i.    *Discriminatory Discharge*

Plaintiff raises discriminatory discharge claims under the Rehabilitation Act and NJLAD. Compl. ¶¶ 36–38, 40. Under each statute, Plaintiff must show that he was fired because of his disability. *Hamzat v. Pritzker*, No. 14-6440, 2016 WL 3561768, at *2 (D.N.J. June 28, 2016) (Rehabilitation Act); *Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp. 3d 214, 235–36 (D.N.J. 2015) (NLJAD). But he cannot meet this burden here. Bayonne notified him on June 1, 2015, that he was to be laid off as of July 17, 2015. DSJ Decl., Ex. 5; *see also Fowler v. AT & T, Inc.*, 19 F.4th 292, 300–01 (3d Cir. 2021) (holding that a notice of termination qualifies as an adverse employment action). Plaintiff testified that his alleged disability arose from a motorcycle accident that occurred on or around June 11, 2015. Pl. Dep. 24:21–25:6. Given that the notice of

16

termination—the adverse employment action here—occurred before Plaintiff was even allegedly disabled, there can be no causal link between the latter and the former. *See Reutzel v. Answer Pro, LLC*, No. 17-944, 2019 WL 3557365, at *5 (W.D. Pa. Aug. 5, 2019) (finding no causal connection where the employer did not know of the plaintiff's disability until after the adverse employment action). Moreover, Plaintiff testified that he was not claiming that Bayonne laid him off because of the disability he suffered from his motorcycle accident. Pl. Dep. at 76:3–7 ("Q. Were you at some point disabled? A. Yes. Q. And was that as a result of your motorcycle accident? A. Correct."); *id.* at 77:7–9 ("Q. So you're not claiming that the city laid you off because of the accident; are you? A. No.). Bayonne is thus entitled to summary judgment on the discriminatory discharge claims and Plaintiff's motion is denied.

### ii.    Failure to Accommodate

Plaintiff also raises failure to accommodate claims under the Rehabilitation Act and NJLAD. Compl. ¶¶ 36–37, 43. Under each statute, Plaintiff must have requested an accommodation. *Reid v. Veterans Admin., Pittsburgh, PA*, No. 22-1025, 2025 WL 1798137, at *5 (W.D. Pa. June 30, 2025) (Rehabilitation Act); *Marrin v. Cap. Health Sys., Inc.*, No. 14-2558, 2017 WL 2369910, at *28 (D.N.J. May 31, 2017) (NJLAD). Additionally, Plaintiff must "prove that at all material times he was able to perform the essential functions of his job, with or without accommodation." *McBurrows v. Verizon*, No. 15-6321, 2019 WL 6908014, at *7 (D.N.J. Dec. 19, 2019) (citation omitted) (NJLAD); *see also Rodriguez v. Widener Univ.*, No. 13-1336, 2013 WL 3009736, at *6 (E.D. Pa. June 17, 2013) (Rehabilitation Act).

Plaintiff has not put forth evidence of either element. First, Plaintiff testified that he never requested an accommodation after he was injured.[9] *See* Pl. Dep. at 94:24–95:9 ("Q. So you didn't

---

[9] In Plaintiff's response to Defendants' Statement of Material Facts, Plaintiff asserts that at some unspecified date in June 2015 he sent an individual named Debbie Falciani a letter requesting an

even request the accommodation before the layoff took effect? A. No.").  Second, Plaintiff testified that he "could have been given a desk job" as an accommodation but then stated that he could not have physically done any desk job during this period.  *See id.* at 78:23–79:6, 94:24–95:5.  Given that Plaintiff never requested an accommodation and, in any event, could not have performed the essential functions of a desk job between the time of the accident and the predetermined date of his dismissal, Plaintiff cannot prevail on a failure to accommodate theory.  Therefore, Bayonne is entitled to summary judgment on Plaintiff's failure to accommodate claims and Plaintiff's motion is denied.

### iii.    Individual NJLAD Liability

Plaintiff also brings an NJLAD claim against Demarco based on his involvement in Plaintiff's termination.  A supervisor cannot be liable under the NJLAD if the employer is not found primarily liable,  *Dzibela v. BlackRock Inc.*, No. 23-2093, 2024 WL 4349813, at *16 (D.N.J. Sept. 30, 2024), and thus Demarco is likewise entitled to summary judgment on any NJLAD claim and Plaintiff's motion is denied.

### D. Count IV: FMLA Interference

Plaintiff brings an FMLA interference claim against both Bayonne and Demarco.  Compl. ¶¶ 47–52.  The FMLA prohibits an employer from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right" that the law guarantees.  29 U.S.C. § 2615(a)(1).  To prevail on an FMLA interference claim, an employee must show that (1) he was

---

accommodation, citing testimony he gave in front of the ALJ.  *See* ECF No. 173 ¶ 68 (citing PSJ Decl., Ex. F at 172:15–16).  But the specific testimony cited does not state this.  Although the Court is not required to "sift through the record in search of evidence to support a party's opposition to summary judgment," the Court could not locate any reference to a request for an accommodation made by Plaintiff in that transcript.  *Heyman v. Citimortgage, Inc.*, No. 14-1680, 2019 WL 2642655, at *40 (D.N.J. June 27, 2019) (quoting *McCann v. Kennedy Univ. Hosp., Inc.*, 596 F. App'x 140, 146 (3d Cir. 2014)).

entitled to benefits under the FMLA and (2) he was denied such benefits. *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.,* 691 F.3d 294, 312 (3d Cir. 2012). But "an employee cannot prevail on an FMLA interference claim" where, as here "the decision to terminate the employee was made before he requests FMLA leave." *Liggins-McCoy v. Democratic Caucus of Senate of Pa.*, No. 19-1639, 2022 WL 1446987, at *7 (E.D. Pa. May 5, 2022) (citation omitted); *see also Tapia v. City of Trenton*, No. 20-6166, 2023 WL 4551643, at *3 (D.N.J. July 14, 2023) ("[A] plaintiff cannot pursue a FMLA interference claim when the decision to terminate the plaintiff was made before the plaintiff invoked his rights under the FMLA."). Plaintiff received notice on June 1, 2015, that he was to be laid off effective July 17, 2015. *See* DSJ Decl., Ex. 5. Plaintiff suffered injuries in a motorcycle accident after receiving this notice. *See* Pl. Dep. at 24:21–25:6. Thus, even if he had requested FMLA leave,[10] his interference claim would fail because the decision to terminate Plaintiff predated his injury. *See Tapia*, 2023 WL 4551643, at *2–3 (granting summary judgment to the defendant on an FMLA interference claim because the adverse employment decision was made by the defendant before the plaintiff requested FMLA leave); *Brigandi v. John Wiley & Sons, Inc.*, No. 13-5193, 2015 WL 4042104, at *6 (D.N.J. July 1, 2015) (same). Accordingly, Defendants are entitled to summary judgment on this claim and Plaintiff's motion is denied.

### E.  Counts V–VI: Contract Claims

#### i.      Count V: Breach of Contract

Plaintiff brings a breach of contract claim for "firing Plaintiff[] without true and just cause and failing to inform" Plaintiff of certain statutory rights. Compl. ¶ 55. Although he appears to rely on an employee handbook, a collective bargaining agreement ("CBA"), and the civil service

---

[10] Plaintiff does not cite anything in the record showing that he requested FMLA leave. Moreover, Plaintiff does not address the FMLA claim in his briefing.

19

rules as the basis of this contract, his allegations focus primarily on the handbook.[11]  *See id.* ¶¶ 11, 54–55 ("Defendant City of Bayonne failed to discharge its contractual duties as set forth in the manual.  Similarly, Defendant City of Bayonne committed an additional breach when, in contravention of the Handbook's mandate, it failed to 'look after Plaintiff[']s interests' . . . .").  To sustain a contract claim on an employee handbook, Plaintiff must point to a "provision that contains 'an express or implied promise concerning the terms and conditions of employment.'" *Lopez v. Lopez*, 997 F. Supp. 2d 256, 277 (D.N.J. 2014) (quoting *Witkowski v. Lipton*, 643 A.2d 546, 550 (N.J. 1994)).

Plaintiff has not done so.  He has not produced the employee handbook or CBA that he bases his contract claim on, nor cited any specific provisions in these documents or in the civil service rules.[12]  *See* Compl. ¶¶ 11, 55; PSJ Br. at 5–6, 26–27.  Instead, he relies on vague allegations concerning the contract in the Complaint, PSJ Br. at 5–6, 26–27, which cannot create a genuine issue of fact at this juncture.  *Jerri*, 2016 WL 3453203, at *3 n.4 (citation omitted).  Therefore, Plaintiff has failed to establish the existence of a contract or any breach thereof and Defendants are entitled to summary judgment on the breach of contract claim and Plaintiff's motion is denied.

> ii.     *Count VI: Breach of the Implied Covenant of Good Faith and Fair Dealing*

Absent a contract, there can be no breach of the implied covenant of good faith and fair dealing.  *Shakib v. Back Bay Rest. Grp., Inc.*, No. 10-4564, 2011 WL 4594654, at *6 (D.N.J. Sept.

---

[11] Plaintiff's summary judgment briefing does not provide any additional clarity on the relevant contract beyond citing the Complaint.   See PSJ Br. at 5–6, 26–28.

[12] In his brief, Plaintiff states that he "sets forth the contract and the requirements thereto under N.J.A.C. 6A:23-4.4." PSJ Br. at 27.  Title 6A of the New Jersey administrative code concerns the state's Department of Education, so the relevance of the cited provision is unclear.  Title 4A of the administrative code governs civil service.

30, 2011).  Accordingly, Defendants are entitled to summary judgment on this claim and Plaintiff's motion is denied.

### F.  Count VII: New Jersey State Constitutional Claims

Plaintiff brings a claim against Bayonne and Demarco under Article I of the New Jersey State Constitution pursuant to the NJCRA.  Compl. ¶¶ 62–70.  The Complaint alleges that Defendants retaliated against Plaintiff for speaking out "against non-adherence to Property Maintenance standards and guidelines, favoritism toward certain contractors or Councilman, developers, owners, builders, and property owners."  *Id.* ¶ 66.  But besides the allegations in the Complaint, Plaintiff cites nothing in the record to support this claim.  PSJ Br. at 22.  Because that is insufficient at this juncture to show a genuine issue of material fact, *Lee*, 2017 WL 3608140, at *10, Defendants are entitled to summary judgment on this count and Plaintiff's motion is denied.

## IV.   CONCLUSION

For the foregoing reasons, Defendants are entitled to summary judgment on all counts and Plaintiff's motion for summary judgment is denied.

Accordingly, **IT IS** on this 30th day of June, 2026;

**ORDERED** that Defendants' motion for summary judgment (ECF No. 167) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's motion for summary judgment (ECF No. 166) is **DENIED**; and it is further

**ORDERED** that Plaintiff's Complaint (ECF No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk's Office is directed to mark this case as **CLOSED**.

**SO ORDERED.**

*s/ Claire C. Cecchi*
_____
**CLAIRE C. CECCHI, U.S.D.J.**